Thomas H. McCruden v. Isador Jonas, Newman Kujavski and Estelle G. Sommers. Yetta Greenboum's Appeal.

*Partnership—Insolvency—Priority of creditors—Act of April 14, 1838.*

An insolvent partnership composed of three of the four members of a second insolvent partnership cannot, as a creditor of the latter, share equally with the latter's other creditors in the distribution of its assets. There is nothing in the act of April 14, 1838, P. L. 457, which will sustain such a claim.

*Partnership—Insolvency—Promissory notes.*

Where an insolvent partnership composed of four persons gives a promissory note to another insolvent partnership composed of three persons, all of whom are members of the drawer partnership, and the note is transferred by the payees as collateral security for a pre-existing debt to a third person who has full knowledge of the affairs of both partnerships, such holder of the note will be postponed to the other creditors of the firm which made the note.

*Promissory notes—Place of payment—Presumption.*

Where three promissory notes are given in another state by the same maker, at the same time, bearing the same date, payable within the same time to the same person, to apply on the same debt, and two of the notes are made payable at the maker's store, and the third note is not made payable at any designated place, the presumption is that the place of payment of the third note was inadvertently omitted, and that the place of payment of the third note was also at the maker's store in Pittsburg.

Argued Nov. 5, 1895. Appeal, No. 245, Oct. T., 1895, by Yetta Greenboum, from decree of C. P. No. 1, Allegheny Co., June T., 1893, No. 395, distributing a fund raised at a receiver's sale. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Exceptions to auditor's report.

The case was referred to William M. Watson, Esq., who reported the facts to be as follows:

The facts relevant and material to a distribution to creditors of the fund of $7,613.10 now in the hands of L. J. Adler, receiver of the Parisian Cloak and Suit Company, are as follows:

In 1891 the firm of I. Jonas and Company, then doing a cloak and suit business in the city of Chicago, Illinois, was composed of Isador Jonas, Newman Kujavski and William Greenboum. In May, 1891, the members of that firm, with Thomas H. McCruden, of Pittsburg, formed a partnership called the Parisian Cloak and Suit Company, which was to be located, and actually was located, in Pittsburg, Pennsylvania, and in September, 1891, opened up the business of selling at retail, cloaks and suits, at the corner of Penn avenue and Sixth street. In accordance with the requirements of the partnership articles, Thomas H. McCruden then resided in Pittsburg, and continued to reside there until the appointment of said receiver in May, 1893. By the partnership articles forming this firm it was agreed, in substance, to buy not less than two thirds of all its cloaks from I. Jonas and Company of Chicago, and its partnership existence was to continue until December 31, 1893.

In October, 1891, William Greenboum died and his interest in the Parisian Cloak and Suit Company remained in the firm until September, 1892, when it was purchased by Mrs. Estelle G. Sommers, who thereupon became a member of that firm. Mrs. Sommers, in November, 1892, also purchased the interest of Mr. Greenboum in the firm of I. Jonas and Company, and she thereupon became a member of that firm. No other change took place in either instance, and the two firms continued their relations the same as before William Greenboum's death.

At Chicago, Illinois, on April 15, 1893, the Parisian Cloak and Suit Company made three promissory notes, of which the following are copies:

"$6,773.01                    CHICAGO, Ills., April 15th, 1893.

"Three months after date we promise to pay to the order of I. Jonas and Company sixty-seven hundred seventy-three 01–100 dollars payable at our store with seven per centum interest.

"Value received,

"(Signed)    PARISIAN CLOAK AND SUIT COMPANY.

"$3,730.86                    CHICAGO, Ills., April 15th, 1893.

"Four months after date we promise to pay to the order of
I. Jonas and Company thirty-seven hundred and thirty 86-100
dollars payable at our store with seven per centum interest.

"Value received.

"(Signed)    PARISIAN CLOAK AND SUIT COMPANY.


"$5,664.52                    CHICAGO, Ills., April 15th, 1893.

"Three months after date we promise to pay to the order of
I. Jonas and Company fifty-six hundred and sixty-four 52-100
dollars—at—with interest at the rate of seven per centum per
annum. Value received.

"(Signed)    PARISIAN CLOAK AND SUIT COMPANY."


All of these three notes are attached to the deposition of Mrs.
Greenboum, were all drawn up on April 15, 1893, by Newman
Kujavski in Chicago, and on April 17, 1893, were all delivered
personally to Mrs. Yetta Greenboum in Chicago, with the in-
dorsement of I. Jonas and Company on each note, and since then
indorsed by Mrs. Greenboum for their identification in this case.
They were given to her by I. Jonas & Company for moneys
which she had theretofore loaned that firm at four or five dif-
ferent times, in all amounting to $15,450 and interest. The
Parisian Cloak and Suit Company on April 15, 1893, owed
I. Jonas and Company twenty-four thousand four hundred
seventy-seven 17-100 dollars ($24,477.17) for goods bought in
their business.

In order to have a clearer understanding of the matter it will
be well to insert here a copy of Mrs. Greenboum's deposition
taken in California on May 21, 1894, as follows. Mrs. Green-
boum testifies:

My full name is Yetta Greenboum. My age is fifty-eight
years and eleven months. I will be fifty-nine years old on the
25th of May, 1894. My residence is in this place, Soledad,
Monterey county, state of California. I have no occupation.

I. Jonas and Company were then and have ever since been
owing me $16,168.39. No part of that has ever been paid.

On April 17, 1893, in settlement of my claim but not in pay-
ment of it, I. Jonas and Company gave me three notes made by
the Parisian Cloak and Suit Company payable to the order of

I. Jonas and Company which I attach to these answers, and for the purpose of identification have put my name on each of them.

These notes, as I said, were all given me April the seventeenth, 1893.

Nothing has ever been paid on account of any of these three notes by either the Parisian Cloak and Suit Company or I. Jonas and Company, or by any one else; to me or to any one for me.

I don't think of anything else.

In answer to cross-interrogatories Mrs. Greenboum testifies :

I have lived in this place, Soledad, for the last eleven years, excepting that some time in the month of June, 1892, I moved to Chicago, Illinois, where I stayed until August, 1893, when I moved back here. Before I lived here I lived in Watsonville, California, about fifteen years. My name is Yetta Greenboum. I was born on the 25th day of May, 1835. I am a widow. My husband's name was William Greenboum.

My claim against I. Jonas and Company was entirely for moneys which I loaned them from time to time. On February 6, 1892, I loaned them $7,500; on January 24, 1893, $1,500; on January 30, 1893, $2,000; on February 7, 1893, $1,750; on February 14, 1893, $2,700. This makes a total of $15,450, which with interest amounted to $16,168.39 on the 15th of April, 1893. This money has never been paid back. They gave me these notes on the 17th day of April, 1893, at their store at 146, 148 State street, Chicago, Illinois. Newman Kujavski, I. Jonas and myself were present at the time. Nothing took place at the time, except that Mr. Jonas handed me the notes, and said that they hadn't the money to pay me just then, but that they would give me these notes, and that I would have no trouble to discount them if I wanted to raise the money on them; that the notes were good and would surely be paid when due ; that is all that happened or was said. I asked them frequently before that for payment; then I asked them for a note. They said they would see about it; finally they gave me those three notes.

I am the mother-in-law of Isador Jonas, and also the mother of Estelle G. Sommers. I am not related to any other members of either the Parisian Cloak and Suit Company or I. Jonas and Company. My husband was at one time a member of both

firms. He died October 31, 1891. His interest was left in the business in Pittsburg until about the 16th day of September, 1892, when it was sold to my daughter, Estelle G. Sommers, and the estate's interest in the Chicago business remained there until about the 12th day of November, 1892, when my daughter bought out that interest also. I don't know of my own knowledge who the members of either the firm of the Parisian Cloak and Suit Company and of I. Jonas and Company were after that, excepting that I do know that my daughter, Estelle G. Sommers, and my son-in-law, I. Jonas, were members of both firms. I understood that Newman Kujavski was also a members of both firms, and that Thomas H. McCruden was not a member of I. Jonas and Company, but only of the Parisian Cloak and Suit Company.

These three notes were just received by me from my Chicago lawyers, Messrs. Lowenhaupt and Samuels, by registered mail. They were left with them for collection when I left Chicago. There was no agreement or understanding between I. Jonas and Company, or any of its members, and myself with reference to these notes, excepting, as I have already said, they were given to me in settlement of my claim against them and for no other reason. These notes are original and not renewal notes. While I have no exact knowledge as to what the Parisian Cloak and Suit Company got from I. Jonas and Company when I got these notes, still I know that the Parisian Cloak and Suit Company were always buying goods from I. Jonas and Company and were always owing them a good deal. Although nothing was said about it, I suppose that the Parisian Cloak and Suit Company had given these notes to I. Jonas and Company for moneys which they were owing them. At any rate I accepted the notes in good faith, and, so far as I know, I. Jonas and Company received them in good faith from the Parisian Cloak and Suit Company. I was not present when these notes were signed, and do not know, of my own knowledge, where they were signed. The signatures and indorsements on these notes are in the handwriting of Mr. Kujavski. I know that, by the partnership agreement, he had the right to sign notes for both firms. I know that by the partnership agreement of the Parisian Cloak and Suit Company, Mr. McCruden did not have the right to sign notes for the firm.

I say emphatically that there never has been any arrangements or understanding, secret or otherwise, between myself and any person whatsoever, that these notes were given to me for any purpose other than I have already said, or that anybody was to have any interest in them outside of myself. I loaned these moneys to I. Jonas and Company, as I have already said, and they are now honestly due me. I was not and could not have been directed by any one not to tell any secret arrangement about these matters, as there was no such arrangement. This money was part of what my husband left me.

The fund now about to be distributed arises wholly from the sale of the personal property of the Parisian Cloak and Suit Company, and Mrs. Greenboum claims, as a creditor of that firm, to share in that fund equally with its other creditors.

The auditor citing, Backus v. Murphy, 39 Pa. 397; Story on Partnership, par. 360; Ex parte Kendall, 17 Vesey, 526; Lindley on Partnership, 4; Daniel on Neg. Inst. par. 639; Royer v. Keystone Nat. Bank, 83 Pa. 248; Smith v. Philbrick, 10 Gray, 252; Oxnard v. Varnum, 111 Pa. 193; 1 Daniel on Neg. Inst. par. 1171, decided that Mrs. Greenboum should be postponed to the other creditors of the Parisian Cloak and Suit Company.

Exceptions to the auditor's report were dismissed by the court.

*Errors assigned* were in dismissing exceptions to auditor's report.

*John Wilson,* for appellant.—A note is prima facie evidence of the settlement of accounts to its date: Thornton v. Williams, 14 Ind. 518; Gaskin v. Wells, 15 Ind. 253; Spencer v. Chrisman, 15 Ind. 215.

Mrs. Greenboum took an absolute title to the notes: 1 Benjamin on Sales, 14; Davis v. Funk, 39 Pa. 243; Diller v. Brubaker, 52 Pa. 498; Conyngham's App., 57 Pa. 474; Stuart v. Biglers' Assignees, 98 Pa. 80; Searight v. Bank, 162 Pa. 504; Kilpatrick v. B. & L. Assn., 119 Pa. 30; McGinn v. Holmes, 2 Watts, 121; McLughan v. Bovard, 4 Watts, 312; Happy v. Mosher, 48 N. Y. 313.

The Parisian Cloak and Suit Company would be estopped under the circumstances from setting up the defense that Mrs. Greenboum is not a holder for value and that the creditors are,

therefor, also estopped: Nash v. Baker, 58 N. W. 706; Manning v. McClure, 36 Ill. 490; Bigelow on Estoppel, 580; Heffner v. Dawson, 63 Ill. 403; Hamer v. Johnson, 5 How. (Miss.) 698.

Neither McCurdy nor any other partner of the Parisian Cloak and Suit Company has any equity to postpone Mrs. Greenboum, and therefore, no creditor has any such equity: Case v. Beauregard, 99 U. S. 124; Rice v. Barnard, 20 Vt. 479; York Co. Bank's App., 32 Pa. 466; Bush v. Crawford, 9 Phila. 392; Huiskamp v. Moline Wagon Co., 121 U. S. 310; Leonard, Receiver, v. Smith, 162 Pa. 284; Appeal of York Co. Bank, 32 Pa. 446; Siegel v. Chidsey, 28 Pa. 279; Walker v. Marine National Bank, 98 Pa. 574; Gallagher's App., 114 Pa. 353; Bond v. Atkins, 6 W. & S. 165; Schmertz v. Shreeve, 62 Pa. 457.

In our case it is not denied that Mrs. Greenboum is a bona fide holder, and that the notes were drawn, not for the debt of an individual member of the firm, but for an actual firm debt of the Parisian Cloak and Suit Company: Bush v. Crawford, 9 Phila. 392; Hoskinson v. Eliot, 62 Pa. 393; Ihmsen v. Negley, 25 Pa. 297; Phelan v. Moss, 67 Pa. 59; McSkerran v. Neeley, 91 Pa. 17.

In Pennsylvania a firm in law is a distinct person from the members who compose it: Donnally v. Ryan, 41 Pa. 306; Tassey v. Church, 6 W. & S. 465; Clarke v. R. R., 136 Pa. 408; 1 Bates on Partnership, sec. 170; Parsons on Partnership, sec. 1–4.

The act of assembly of April 14, 1838, sec. 1, P. L. 457 (Purd. Dig. 1646), recognizes the fact and gives to firms composed partly of the same persons the right to sue one another, to get judgment against one another and to take in execution the firm effects. It gave a remedy at law where before they had only a remedy in equity: Wentworth v. Raiguel, 9 Phila. 275; Allen v. Erie City Bank, 57 Pa. 129; Ex parte Castell, 2 Gl. and J. (Eng.) 127; Ex parte Stroud, Id. 127; Ex parte Hesham, 1 Rose, 146; In re Buckenhouse, 2 Lowell, 331; Honseal v. Smith, 45 Pa. 487; Trickett on Assignments, § 80.

When a firm of two or more persons carry on a distinct trade, the creditors of the larger firm are not the creditors of the smaller firm; and, consequently, when the firm of two or more prove against the larger firm, they do not prove against their own creditors.

*Joseph Stadtfeld, J. A. Emery, Josiah Cohen, A. Israel* and *Edwin S. Craig* with him, for appellee.—The appellant holds the notes as collateral security for a pre-existing indebtedness: Kemmil v. Wilson, 4 Wash. C. C. 308; Ripley v. Greenleaf, 2 Vermont, 129; Bank of Penna. v. Potius, 10 Watts, 148; Lord v. Ocean Bank, 20 Pa. 384; Bank of U. S. v. Peabody, 20 Pa. 454.

The law of Pennsylvania applies and Mrs. Greenboum is not a holder for value: Andrews v. Pond, 13 Peters, 65; Allshouse v. Ramsey, 6 Wharton, 331; Mullen v. Morris, 2 Pa. 85; Daniels on Negotiable Instruments, sec. 889; Smith v. Philbrick, 10 Gray, 252; Edwards on Bills and Notes, 690; Royer v. Keystone Bank, 83 Pa. 248; Maynard v. Sixth Nat. Bank, 98 Pa. 250; Carpenter v. Nat. Bank of Republic, 106 Pa. 107; Cozens v. Middleton, 118 Pa. 622; Altoona Bank v. Dunn, 151 Pa. 228; Cummings v. Boyd, 83 Pa. 372; Hart v. U. S. Ins. Co., 118 Pa. 565.

Mrs. Greenboum's rights rising no higher than those of I. Jonas & Co., her claim must be postponed in payment until the payment in full of all the other creditors of the Parisian Cloak & Suit Co.: Worrall's App., 41 Pa. 524; Heims v. Baritz, 8 Watts, 39; Dateman's App., 77 Pa. 243.

OPINION BY MR. JUSTICE McCOLLUM, February 10, 1896:

The fund for distribution was created by a receiver's sale of the property of the Parisian Cloak and Suit Company. It is not sufficient to pay the debts of the company in full, and we are therefore required to consider and determine on this appeal whether Yetta Greenboum is entitled to participate in it on the footing of the other creditors. To substantiate her claim that she is, she presents three notes, made by the Parisian Cloak and Suit Company on the 15th of April, 1893, to the order of I. Jonas and Company from whom she received them, duly indorsed as collateral security for their pre-existing indebtedness to her. It is conceded that the notes represent a bona fide indebtedness of the makers to the payees and that she has by virtue of them the same rights in the distribution of the fund in question that they gave to the parties to whose order they were drawn. In order to make her position in the distribution clear it is necessary to state the material facts affecting it and these are as fol-

lows : The place of business of I. Jonas and Company was in Chicago, Ill., and that of the Parisian Cloak and Suit Company was in Pittsburg, Pa. All the members of the firm of I. Jonas and Company were members of the Parisian Cloak and Suit Company and liable for the debts of the latter as well as for the debts of the former. In the latter there was but one person who was not a member of the former, and he was not intrusted with the management of the finances of his firm nor authorized to sign bills and notes for it. These powers were vested in the other members of his firm who, as we have seen, constituted the partnership of I. Jonas and Company. William Greenboum, the husband of Yetta Greenboum, was a member of both firms, and after his death in October, 1891, their daughter Mrs. Estelle Sommers purchased the interest of his estate in each of them, and thenceforth possessed and exercised the rights and powers in the management of them that he had and exercised in his lifetime. Isador Jonas was a son-in-law of Mrs. Yetta Greenboum, and as she had a daughter and son-in-law in each firm it is not surprising that she had the knowledge respecting the management and status of both firms that she evinced in her deposition. As she was a creditor of I. Jonas and Company and held the notes of the Parisian Cloak and Suit Company as collateral security for their debt she was interested in acquiring this knowledge, and her possession of it may have had some connection with the fact that she did not accept the notes in payment or satisfaction of the debt which the payees therein owed her. Two of the notes were expressly payable at the store of the makers in Pittsburg and the other was impliedly so. True, the place of payment was not named in it but the omission to name it was under the circumstances surrounding the transaction presumably an inadvertence. The notes were made and dated at the same time and place, with the same purpose in view, and they were promptly passed by the payees to their creditor who knew that the place of business of the makers was in Pittsburg. It is said in vol. 2, p. 328 of Am. & Eng. Ency. of Law that "if no place of payment is named in the note it is understood to be the place of residence of the maker," and that " it cannot be presumed that the place of payment is the place of date, though some cases hold that in the absence of any express provision on this point the intent was prima facie to pay where the

note was made. In Oxnard v. Varnum, 111 Pa. 193, it is said that "the making and dating of a note at a particular place is not equivalent to making it payable there," but it is proper to state that the action was by the second indorsee against the first indorser, and involved the duty of the holder in regard to presentment and demand at the residence or place of business of the maker. If however, there is a presumption that, in the absence of an express provision on the subject, the place of date is the place of payment we agree with the learned auditor and the learned court below that it cannot prevail against the facts and circumstances connected with and surrounding the exe-·cution and delivery of the note in question. We conclude therefore that Mrs. Greenboum occupies no higher ground in the distribution than I. Jonas and Company would have occupied had they retained the notes, and that her claim upon the fund must be passed upon in accordance with the laws of Pennsylvania, governing the distribution of the assets of an insolvent partnership.

The learned court below in awarding to Mrs. Greenboum the balance of the fund remaining after paying thereout the claims of the other creditors in full gave her all that she was entitled to, and all that the parties to whose rights she succeeded could possibly have received from it. As they were liable for all the claims of the other creditors they could not have participated in the distribution until those claims were satisfied. This is a proposition in accordance with equity and well sustained by the decisions of this court: Erb's Appeal, 2 P. & W. 296; Himes v. Barnitz, 8 Watts. 39; Worral's Appeal, 41 Pa. 524, and Datesman's Appeal, 77 Pa. 243. There is nothing in the act of April 14, 1838, which sustains the contention that an insolvent partnership composed of three of the four members of another insolvent partnership can as a creditor of the latter share equally with its other creditors in the distribution of its assets. This act has been severely and justly criticised in most if not all of the cases in which it has been considered but it has never yet produced such results as are contended for in this case: Tassey v. Church, 6 W. & S. 465; Pennock v. Shayne, 6 W. & S. 239, and Allen v. Erie City Bank, 57 Pa. 129.

Decree affirmed and appeal dismissed at the costs of the appellant.